**Edward K. ZAHORIK, Plaintiff,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO., INC., Defendant.**

No. 86 C 3638.

United States District Court,
N.D. Illinois, E.D.

Jan. 14, 1987.

Anthony S. DiVincenzo, Campbell & Di-Vincenzo, Chicago, Ill., for plaintiff.

David F. Graham, Kathleen L. Roach, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Edward Zahorik charges Smith Barney, Harris Upham & Co., Inc. ("Smith Barney") in a four-count complaint with securities fraud, and Smith Barney now moves under Fed.R.Civ.P. 12(b)(6) to dismiss two of those counts for failure to state a claim.[1] For the following reasons, Smith Barney's

motion is denied in part and granted in part.

## I. FACTUAL ALLEGATIONS

In reviewing Smith Barney's motion to dismiss, this Court must view the well-pleaded factual allegations in Zahorik's complaint and all reasonable inferences therefrom as true. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984). Smith Barney's motion should be granted only if it appears beyond doubt that Zahorik can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Winkler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 642 F.Supp. 122, 123–24 (N.D.Ill.1986).

The complaint stems from an investment opportunity offered to Zahorik by Smith Barney employees in November 1981 regarding a limited partnership interest in Alpha Energy 1981—A Drilling Program ("Alpha–1981"), an oil and gas drilling program. Zahorik alleges that Smith Barney employees advised him of Alpha–1981 and solicited his investment. Plaintiff's First Amended Complaint ("Complaint"), ¶ 6. Smith Barney provided Zahorik with a "private placement memorandum" which it played a significant role in authoring, reviewing and editing. Complaint, ¶ 7. After reviewing the memorandum, Zahorik decided to invest $75,000 to purchase one-half of a unit of Alpha–1981, and on or about October 1, 1982, Zahorik added another $7,500 to his initial investment following a "mandatory assessment" by Alpha–1981's general partner. Complaint, ¶¶ 8, 9.

Zahorik alleges that Smith Barney made numerous misrepresentations or omitted material facts in its representations to him about the financial prospects of Alpha–1981, thus overstating the value of the program and, accordingly, the price of Zahorik's investment. The complaint includes counts for violation of federal securities laws (Count I) and common law fraud (Count III). It also contains counts for

---

**1.** In its original motion to dismiss, Smith Barney also sought dismissal of Count I, a claim under the federal securities laws. However, Smith Barney withdrew its motion on Count I following this Court's order allowing Zahorik to file an amended complaint on August 1, 1986.

violation of the Illinois Securities Law of 1953, Ill.Rev.Stat. ch. 121½, ¶¶ 137.1–137.16 (1985) (Count II) and for the common law tort of negligent misrepresentation (Count IV), which Smith Barney moves to dismiss here.

## II. COUNT II—ILLINOIS SECURITIES LAW

The Illinois Securities Law of 1953 proscribes various types of fraud or deceit upon the purchaser in connection with the sale of securities. *See* Ill.Rev.Stat. ch. 121½, ¶ 137.12 (1985). Zahorik alleges in Count II that Smith Barney violated ¶ 137.12 by inducing him to invest in Alpha–1981 with affirmative misrepresentations as well as material omissions regarding the program. Among the remedies sought by Zahorik under this count is rescission of the sale of the limited partnership interest under Ill.Rev.Stat. ch. 121½, ¶ 137.13A (1985).

Smith Barney first argues that Zahorik did not adequately plead the giving of a notice of rescission, which, under the statute must be filed by the purchaser "within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable." Ill.Rev.Stat. ch. 121½, ¶ 137.13B (1985). Zahorik cured this defect by amending his complaint, *see* Complaint, ¶ 16, and Smith Barney appears to have dropped this contention by not addressing the amendment in its reply memorandum. Accordingly, because we view the complaint as adequately stating that Zahorik has provided a proper notice of rescission, we deny Smith Barney's motion on this ground.

■ Smith Barney's second argument for the dismissal of Count II is based on the statute of limitations. We first observe that both parties appear to agree that the governing limitations period is the three-year period provided for in Ill.Rev.Stat. ch. 121½, ¶ 137.13D (Smith-Hurd 1960), which has since been amended, *see* Ill.Rev.Stat. ch. 121½, ¶ 137.13D (1985). The original ¶ 137.13D stated that "[n]o action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale." The new ¶ 137.13D provides:

No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale, provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act [footnote omitted] which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of (1) the date upon which the party bringing such action has actual knowledge of the alleged violation of this Act, or (2) the date upon which the party bringing such action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.

Ill.Rev.Stat. ch. 121½, ¶ 137.13D (1985). The amendment was not effective until January 1, 1986, and, although this suit was filed after that date, Smith Barney argues that the cause of action accrued prior to 1986 so the old statute should apply.[2]

---

**2.** The general rule in Illinois is that an amendment extending a statute of limitations cannot act retroactively to revive a cause of action which had already been barred by the original limitations period. *Conner v. Copley Press, Inc.*, 99 Ill.2d 382, 388, 76 Ill.Dec. 820, 822, 459 N.E.2d 955, 957 (1984). Smith Barney maintains that because under the three year limitations period from old ¶ 137.13D Zahorik's suit was already barred by the time the amendment took effect, to apply the new limitations period would be to "revive" a cause of action which had already expired. Zahorik appears to concede that the three-year period applies, although this Court views that concession as overly charitable to Smith Barney. Because a major part of Zahorik's claims is made up of allegations that Smith Barney fraudulently concealed the fact that it misrepresented the value of Alpha–1981, it is not clear that his cause of action was barred at the time the 1986 amendment became effective. Rather, Smith Barney's argument

■ We need not choose the applicable statute of limitations at this point, however, because it is clear that Zahorik has adequately pled a claim under the Illinois securities laws under either period. The new provision clearly permits tolling in circumstances where, as here, the defendant is charged with fraudulent concealment which would prohibit even a person exercising reasonable diligence from discovering potential violations of the Act. This suit was filed within five years of the date of the initial sale of the limited partnership interest to Zahorik, and the express statutory language, when matched against Zahorik's complaint, establishes that the complaint was filed in a timely manner under the new limitations period. Ill.Rev.Stat. ch. 121½, ¶ 137.13D (1985).

■ Even if the old statute of limitations applies, Zahorik has filed a timely complaint in light of his specific fraudulent concealment allegations. Smith Barney's contention that the prior statutory language was an absolute bar to any action past three years from the date of sale is completely unsupported by case law. Rather, Smith Barney seeks support in excerpts from the legislative history of the statutory amendment to the limitations period and from interpretive comments to the amendment. The statements drawn from the legislative history merely comment on the expansion of the limitations period and contain no indication that the previously effective three-year period was not subject to equitable tolling in circumstances of fraudulent concealment. Accordingly, we find these statements unpersuasive. The language drawn from the interpretive comments, which are cited in the Smith-Hurd Illinois Annotated Statutes, states that "[t]his tolling amendment was designed particularly to cover cases of fraudulent concealment of so-called 'lulling' activities by promoters. Heretofore, the three-year statute of limitations could be an absolute bar to an action even if discovery was not reasonable or subverted." Interpretive Comments, Ill.Rev.Stat. ch. 121½, ¶ 137.13

(Smith-Hurd Supp.1986). Although this statement suggests that the intent of the legislators may have been to explicitly authorize tolling through this amendment, it does not clearly state that equitable, as opposed to statutory, tolling did not exist beforehand. Rather, the amendment could conceivably have been intended as a clarification of the common law rule.

Nor can an interpretation consistent with an absolute bar for actions filed beyond the three-year period from the date of sale be drawn from the plain language of the statute's original limitations period. Moreover, equitable tolling appears to have been recognized by courts applying Illinois law in cases of fraudulent concealment, even in cases that preceded the amendment. *See Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 326 (7th Cir.1983); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 128 n. 11 (7th Cir.1972); *see also Loziuk v. Smith Barney, Harris Upham & Co., Inc.*, 86 C 3293 slip op. at 3–4 (Oct. 24, 1986) (Parsons, J.) [Available on WEST-LAW, DCT database]. Although, as Smith Barney correctly notes, the equitable tolling discussion in the *Peoria* and *Parrent* opinions specifically refers to equitable tolling on *federal* securities claims to which ¶ 137.13D also applies, the *Parrent* court noted that Illinois rules permit this type of tolling as well. *Parrent*, 455 F.2d at 128 n. 11. Accordingly, we reject Smith Barney's position that the three-year limitation period, even if it applies here, is an absolute bar even in cases of fraudulent concealment and deny Smith Barney's motion to dismiss Count II.

### III. COUNT IV—NEGLIGENT MISREPRESENTATION

Smith Barney requests dismissal of Count IV on the basis that Illinois law requires that a negligent misrepresentation claim must include an allegation (1) that the defendant is in the "business of supply-

here seems to duplicate its claim that the three-year period from the old statute is an absolute

limitation with no equitable tolling allowed.

ing information" for the guidance of others in their business transactions and (2) that such information be supplied in the context of the plaintiff's dealings with third parties.

▮ The parties do not dispute that the tort of negligent misrepresentation is recognized in Illinois. The elements of such an action include the typical elements of a tort action—a duty owed by defendant to plaintiff, the breach of that duty and an injury proximately resulting from that breach. *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 493, 57 Ill.Dec. 904, 912, 429 N.E.2d 1267, 1275 (1st Dist.1981). The duty in the context of a negligent misrepresentation action, however, ordinarily arises from a relationship where the defendant is in the business of supplying information to the plaintiff to guide the latter's business transactions.[3] *Dixie-Portland Flour Mills v. Nation Enterprises, Inc.*, 613 F.Supp. 985, 990 (N.D.Ill.1985). The negligent misrepresentation tort in Illinois is derived largely from § 552 of the Second Restatement of Torts, which provides in part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552 (1977); *see Rozny v. Marnul*, 43 Ill.2d 54, 66–67, 250 N.E.2d 656, 662–63 (1969) (citing then-Draft provision of § 552 with approval).

▮ Zahorik does not quarrel with the proposition that in order to state a claim for negligent misrepresentation a plaintiff must allege that the defendant is in the business of supplying information, but he contends that "a significant portion of Smith Barney's business is to provide information to potential investors." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 7–8. Nowhere in Zahorik's complaint, however, does he allege this fact. The requirement that the defendant be in the business of supplying information to the plaintiff is fundamental to the negligent misrepresentation tort because it is the source of the underlying duty. This requirement is therefore strictly construed. *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 133 Ill.App.3d 844, 850, 88 Ill.Dec. 863, 867, 479 N.E.2d 476, 480 (4th Dist.1985), *aff'd*, 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (Ill. 1986). Although Zahorik did allege that Smith Barney had a substantial role in preparing and reviewing the private placement memorandum, he did not specify whether this was the only service he was purchasing from Smith Barney or if Smith Barney was merely relaying information provided to it as an agent of Alpha–1981. Accordingly, we dismiss Count IV with leave to amend within ten days of this order, provided Zahorik can plead sufficient details regarding Smith Barney's business.

In the event Zahorik does amend his complaint in this manner, it would be necessary for this Court to address Smith Barney's second argument for dismissal of Count IV. Accordingly, we shall briefly address that argument here. Smith Barney maintains that Zahorik must allege not only that Smith Barney was supplying information for Zahorik's use in conducting business transactions, but also that those transactions be between Zahorik and a third party. Smith Barney relies on some Illinois cases which appear to include this "third party" language as an element of a negligent misrepresentation tort. *Grass v. Homann*, 130 Ill.App.3d 874, 879, 85 Ill.Dec. 751, 754, 474 N.E.2d 711, 714 (4th Dist.1984); *Knox College v. Celotex Corp.*, 117 Ill.App.3d

---

**3.** Under Illinois law, purely economic damages are not recoverable in tort actions with narrow exceptions, however, one of those exceptions is the tort of negligent misrepresentation. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 88–89, 61 Ill.Dec. 746, 755, 435 N.E.2d

443, 452 (1982). The rationale of this limitation of tort damages is that in the context of most business transactions resulting in pecuniary damages there are adequate remedies available under the law of sales and contracts. *Id.* at 90–91, 61 Ill.Dec. at 756, 435 N.E.2d at 453.

304, 307–08, 72 Ill.Dec. 703, 706, 453 N.E.2d 8, 11 (3d Dist.1983); *Black, Jackson and Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.*, 109 Ill.App.3d 132, 135, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1st Dist. 1982). Nonetheless, none of these cases really discusses the third party language as a distinct element of the cause of action. Another judge in this district recently characterized this line of cases as a "trend" toward requiring that the information be supplied to plaintiffs for their dealings with third parties. *Riordan v. Smith Barney, Harris Upham & Co.*, No. 84 C 3216, slip op. at 18 (N.D.Ill. June 30, 1986) (Grady, J.) [Available on WESTLAW, DCT database].

■ In our view, Smith Barney and these courts focus unnecessarily on the "third party" language. A more helpful description of the negligent misrepresentation elements would emphasize that the defendant must not simply be in the business of supplying information for the guidance of others in their business transactions, but also that the defendant must have been engaging in that activity with the plaintiff at the time the suit arose. For it is the relationship between the plaintiff and defendant which creates the necessary duty under tort law. Thus, it is insufficient to argue, as Zahorik has, that the defendant is in the business of supplying information if that is not what the defendant was doing when it dealt with the plaintiff. Even if Smith Barney's primary business is supplying information to investors, Zahorik could not maintain a negligent misrepresentation action against it if, for example, Smith Barney made misrepresentations in the course of selling office equipment to Zahorik. Of course, if the relationship between the plaintiff and defendant is

in the context of the defendant's information supplying business, a third party will usually be involved, but that is not the element which creates the duty. Thus, we believe that the existence of a third party is implicit in the requirement that the defendant be in the business of supplying information for the guidance of others in their business transactions and that the defendant's relationship with the plaintiff is in the context of that business.

■ Having said this, we observe that securities brokers may be in an apparent hybrid situation with respect to whether their status is that of a seller of information or a seller of a tangible item. In some circumstances, a securities dealer may purely sell information regarding a potential investor's purchase of an interest in a particular company. Negligent misrepresentations made to the investor in the context of those types of transactions would be a legitimate basis for a negligent misrepresentation action under Illinois law. *See, e.g., Zurad v. Lehman Brothers Kuhn Loeb, Inc.*, 757 F.2d 129, 133–35 (7th Cir.1985). On the other hand, where the dealer simply acts as a selling agent for another party, a sort of informational conduit, and never purports to independently offer "information" regarding the investment potential, it may avoid liability for a negligent misrepresentation action.[4]

■ Smith Barney argues here that because it was merely acting as a selling agent of Alpha–1981, there was no third party involved in the transactions. Zahorik vigorously contends that Alpha–1981 was a third party in this context, however, he has not pled facts sufficient for this Court to discern the exact structuring of the transaction. If Zahorik does choose to amend his complaint as discussed above, he must

---

**4.** We also reject Zahorik's proposition that *Lehmann v. Arnold*, 137 Ill.App.3d 412, 91 Ill.Dec. 914, 484 N.E.2d 473 (4th Dist.1985), and *Richmond v. Blair*, 142 Ill.App.3d 251, 94 Ill.Dec. 564, 488 N.E.2d 563 (1st Dist.1985), support his claim that even if the defendant is acting as an agent of a seller it is liable for negligent misrepresentations made to the plaintiff in the course of the agency relationship. We agree with Smith Barney that those cases, which infer a cause of action for negligent misrepresentation

against a developer and a real estate broker acting on behalf of a seller, are premised on a special duty arising from statutory or regulatory requirements imposed by the state or federal government. *See also Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 59 Ill.Dec. 905, 432 N.E.2d 849 (1982) (cited in *Richmond*, 142 Ill.App.3d at 256, 488 N.E.2d at 566–67). Accordingly, we do not deem *Richmond* or *Lehmann* controlling here.

also plead details about the relationship between himself, Smith Barney and Alpha–1981 in order to comply with the pleading requirements for a negligent misrepresentation action. For now, however, Count IV is dismissed.

In accordance with this opinion, Smith Barney's motion to dismiss is denied with respect to Count II and granted on Count IV. It is so ordered.