Charles R. NELSON, Plaintiff–Appellant,

v.

GAS RESEARCH INSTITUTE, an Illinois corporation; Gas Technology Institute, an Illinois corporation; and TICORA Geosciences, Inc., a Colorado corporation, Defendants–Appellees.

No. 04CA0611.

Colorado Court of Appeals, Div. III.

Aug. 11, 2005.

§ 24–51–1105, C.R.S.2004.

Benezra & Culver, L.L.C., Seth J. Benezra, Dean H. Harris, Lakewood, Colorado, for Plaintiff–Appellant.

Warren & Boonin, LLP, David C. Warren, Jonathan B. Boonin, Boulder, Colorado, for Defendants–Appellees Gas Research Institute and Gas Technology Institute.

Jester & Gibson, LLP, Jay S. Jester, Nancy Bauer Egelhoff, Denver, Colorado, for Defendant–Appellee TICORA Geosciences, Inc.

PICCONE, J.

Plaintiff, Charles R. Nelson, appeals the trial court's summary judgment in favor of defendants, Gas Research Institute and Gas Technology Institute (collectively GTI), and TICORA Geosciences, Inc. We affirm.

## I. Background

GTI is an Illinois corporation. At the time of the events at issue here, Nelson was employed by GTI as Principal Project Manager, Geosciences. GTI, with Nelson's assistance, set out to acquire a majority interest in TICORA, a Colorado company that provided coalbed methane gas resources and reservoir property evaluation services.

Before the acquisition was complete, GTI, TICORA, and Nelson discussed the possibility that Nelson would transfer to Colorado to work for TICORA. Nelson alleges that during these conversations, GTI and TICORA made the following representations to induce him to move to Colorado:

(1) In June 2000, representatives from GTI and TICORA told Nelson that ten percent of TICORA stock had been set aside for key employees and that if Nelson moved to Colorado, he would become a principal and key employee in the company and become eligible for this stock;

(2) During the summer of 2000, a GTI representative told Nelson that he would "not be expected to take a step backwards with respect to either his salary or benefits"; and

(3) In June 2001, a TICORA representative told Nelson TICORA would be "creative" in crafting his compensation.

In August 2000, GTI acquired an ownership interest in TICORA. Shortly thereafter, Nelson moved to Colorado and worked for a year as Chief Scientist for TICORA, but remained an employee of GTI. In December 2001, TICORA offered Nelson a job. This offer did not include stock or other ownership interest in TICORA and did not make Nelson a principal, and Nelson's salary and benefits were not comparable to the salary and benefits he was receiving from GTI. Nelson's attorney negotiated the terms

of employment, and Nelson accepted the offer.

Subsequently, as relevant to this appeal, Nelson filed this lawsuit asserting claims based on statutory fraud under § 8–2–104, C.R.S.2004, and negligent misrepresentation. The trial court granted summary judgment in favor of GTI and TICORA on those claims. Nelson also asserted claims for promissory estoppel, fraud, breach of contract, and violation of the Wage Claim Act. The jury found GTI had breached a contract with Nelson to pay him a bonus, and the remaining claims were dismissed by the court or rejected by the jury.

## II. Statutory Fraud

Nelson contends the trial court erred in granting summary judgment on his claim under § 8–2–104. Specifically, Nelson asserts there are genuine issues of fact as to whether GTI and TICORA used false pretenses to induce him to move to Colorado in violation of § 8–2–104. We disagree.

### A. Summary Judgment

We review a grant of summary judgment de novo. *Thompson v. Maryland Cas. Co.,* 84 P.3d 496 (Colo.2004).

■ Summary judgment is appropriate only if there is a clear showing that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Thompson, supra; Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 298 (Colo.2003). The burden is on the moving party to establish that no genuine issue of fact exists, and any doubts in this regard must be resolved against that party. The nonmoving party is also entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts. *Cyprus, supra.* On appeal, we apply the same standard as did the trial court in determining whether summary judgment is proper. *Dunne v. Shenandoah Homeowners Ass'n,* 12 P.3d 340 (Colo.App.2000).

### B. Fraud

■ "To establish fraud, the plaintiff must show the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." *Coors v. Sec. Life of Denver Ins. Co.,* 112 P.3d 59, 66 (Colo.2005).

■ "[A] false representation of a past or present fact is any words or conduct which create[s] an untrue or misleading impression of the actual past or present fact in the mind of another." *Russell v. First Am. Mortgage Co.,* 39 Colo.App. 360, 364, 565 P.2d 972, 975 (1977).

■ Fraud requires more than the mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time. *State Bank v. States,* 723 P.2d 159, 160 (Colo.App.1986). Unless the speaker making the representations deliberately falsified his or her intention to induce reliance, statements of future events are not actionable. *See Brody v. Bock,* 897 P.2d 769, 776 (Colo.1995). "A promise concerning a future act, when coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud." *Stalos v. Booras,* 34 Colo.App. 252, 255–56, 528 P.2d 254, 256 (1974); *see Kinsey v. Preeson,* 746 P.2d 542 (Colo.1987). Such promises are actionable only where there is proof that the defendant had the present intention not to fulfill the promise. *See Kinsey, supra; Stalos, supra.*

### C. Section 8–2–104

Section 8–2–104 prohibits any person from inducing workers to change from one place of employment to another or to bring workers to Colorado by means of false or deceptive representations. *Pittman v. Larson Distrib. Co.,* 724 P.2d 1379, 1386 (Colo.App.1986). It states:

It is unlawful for any person, company, [or] corporation ... doing business in this state, by itself or its agents or attorneys, to induce, influence, persuade, or engage workmen to change from one place of employment to another in this state, or to bring [workers] ... into this state to work

... through or by means of false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work ....

■ False pretense has been defined as "a false and fraudulent representation made with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to induce the person to whom it is made to part with something of value." *Clarke v. People,* 53 Colo. 214, 215–16, 125 P. 113, 113 (1912).

Section 8–2–107, C.R.S.2004, gives an employee a private right of action for a violation of § 8–2–104. *Pittman, supra.* In such an action, the damages sought must be "sustained in consequence of the false or deceptive representations." Section 8–2–107.

### D. Analysis

Nelson argues that under the plain meaning of § 8–2–104, he does not have to prove fraud to prevail and that there is a factual dispute as to whether GTI and TICORA used false pretenses to "lure him to Colorado." He asserts that the statute establishes two different standards of proof—one which requires a showing that the employer used "false or deceptive representations" and another, lesser standard, which requires a showing of "false pretenses"—and that the use of the term "false pretenses" requires only that he demonstrate that GTI and TICORA made a false implication of fact rather than a false representation. We are not persuaded.

■ The elements a plaintiff must establish to sustain an action under § 8–2–104 are the same as those for common law fraud. Both require that the defendant made a false representation of fact, that the representation was made to induce a person to act or with the intention that it be acted upon, and that damage was sustained in reliance on, or in consequence of, the false or deceptive representation.

■ We reject Nelson's argument that there is a distinction between a "false or deceptive representation" and "false pretenses." A false pretense is a "false representation" made with knowledge of its falsity and with the intent to "deceive and defraud." *See Clarke, supra.* A false representation is any word or conduct that creates an untrue or misleading impression of a past or present fact in the mind of another. *See Russell, supra.* Further, in 1910, when § 8–2–104 was enacted, "false pretenses" was the term used for criminal fraud, currently known as theft by deception. *See* § 18–4–403, C.R.S. 2004. Section 8–2–105, C.R.S.2004, provides for possible criminal liability for a violation of § 8–2–104.

■ We conclude that as a matter of law, the statements upon which Nelson relies to support his claim under § 8–2–104 are not actionable.

Nelson admitted he "knew at the time the statements were made they were not commitments or facts but simply predictions of future events" and were contingent on uncertain future events. When these alleged representations were made, the acquisition was not final, and it was questionable whether it would be finalized. Nelson testified in his deposition that as late as a month before the acquisition was final, he was concerned that it would not occur, he had "questions in [his] mind as to whether [the deal was] going to happen," and he felt there were "significant barriers" to his move to Colorado. Nelson also stated, "[T]here was no offer of a job at TICORA on the table. They were simply representing to me that there was future possibility of a job at TICORA." And the record contains no evidence that the statements were false when made or were made with the intent not to perform.

■ Further, we reject Nelson's contention that there were disputed issues of fact as to whether he justifiably relied on GTI's and TICORA's alleged assurances. Nelson argues that by virtue of his move to Colorado, he established justifiable reliance.

■ Common elements of all fraud actions are that the plaintiff justifiably relied upon the representation or the nondisclosure and that this reliance resulted in damages. *Greene v. Thomas,* 662 P.2d 491, 495 (Colo. App.1982); *see* § 8–2–107; *Robert K. Schader, P.C. v. Etta Indus., Inc.,* 892 P.2d 363, 365 (Colo.App.1994).

Nelson admitted he knew when the statements were made they were not commitments or facts, but were predictions of uncertain future events. Further, the statements were vague allusions to potential benefits. For example, Nelson asserts he was told that a block of stock had been set aside for key employees and after he moved to Colorado he would become "eligible" for the stock. This is not tantamount to a representation that Nelson would be entitled to, or would receive, stock.

Accordingly, we agree with the trial court that there are no genuine issues of material fact as to whether Nelson justifiably relied upon the alleged statements. Thus, summary judgment was appropriate.

### III. Negligent Misrepresentation

Nelson contends the trial court erred in dismissing his claim for negligent misrepresentation. We disagree.

"Negligent misrepresentation" may occur if a person, in the course of his or her business, profession, or employment, supplies false information to another for guidance in the other's business transactions, and the other suffers a pecuniary loss caused by justifiable reliance upon the false information. *Branscum v. Am. Cmty. Mut. Ins. Co.*, 984 P.2d 675, 679 (Colo.App.1999). Thus, a claim of negligent misrepresentation requires a showing of justifiable reliance. *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo.App.2000).

Here, Nelson cites the same facts outlined above to support his negligent misrepresentation claim. Again, these allegations are insufficient to show justifiable reliance. Therefore, the court properly granted summary judgment on this claim.

The judgment is affirmed.

Judge TAUBMAN and Judge KAPELKE * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and